PEOPLE ex rel. SCHLIVINSKI v. MAXWELL, City Superintendent of Schools.

(Supreme Court, Appellate Division, Second Department. March 6, 1903.)

1. SCHOOLS—TEACHERS' LISTS—PREPARATION — CITY SUPERINTENDENT — MANDAMUS.

Revised Charter of New York City (Laws 1901, c. 466) § 1089, provides that the board of teachers' examiners shall examine and issue to applicants who pass the required tests the proper licenses, and that the names of those who are licensed shall be entered by the city superintendent on lists to be filed in his office. *Held*, that the duty of making such lists was thereby imposed on such superintendent, and that mandamus to compel the performance thereof was properly brought against him.

2. SAME—PREPARATION OF LISTS — DISCRIMINATION BETWEEN MALES AND FEMALES.

Revised Charter of New York City (Laws 1901, c. 466) § 1089, requires the board of education to designate the grades of licensees, together with the qualifications for each grade, and that the names of licensees shall be filed in the superintendent's office, a separate list being made for each grade, for which the board of education shall make provision by its by-laws. The board, in 1898, passed a resolution providing for separate lists of male and female teachers, and in June, 1902, provided by a by-law that the qualifications of male applicants should be different from those required for female applicants. *Held*, that such by-law was equivalent to the previous resolution, and hence a holder of a No. 1 license was not entitled to compel the making of a single list for both male and female licensees of such grade.

Appeal from Special Term, Kings county.

Application by the people, on the relation of Charles Schlivinski, by his guardian ad litem, for peremptory mandamus against William H. Maxwell, as city superintendent of schools of New York City. From an order denying the writ, applicant appeals. Affirmed.

Argued before GOODRICH, P. J., and JENKS, WOODWARD, HIRSCHBERG, and HOOKER, JJ.

Abram Schlivinski, for appellant.

Ira Leo Bamberger, for Brooklyn teachers.

Walter S. Brewster (James McKeen, on the brief), for respondent.

GOODRICH, P. J. The applicant asks for a peremptory writ of mandamus compelling the superintendent of schools of the city of New York "to make and file in his office one complete list of all

persons to whom 'Teacher's License No. 1 or Grade B' has been issued  *  *  *,  and to place thereon the names of both men and women to whom said license has been issued, according to their respective ratings  *  *  *,  and to place thereon the name of the relator herein in its proper place." The court denied the motion, and the applicant appeals.

The respondent contends that the applicant's remedy, if he has any, is against the board of examiners instead of the city superintendent. We think not. Section 1089 of the revised charter of the city (Laws 1901, c. 466) provides that the board of examiners shall examine all applicants, and issue to those who pass the required tests the proper license, and that the names of those who are licensed "shall be entered by the city superintendent upon lists to be filed in his office." This not only makes the city superintendent the custodian of the lists, but imposes upon him the active duty which the applicant seeks to enforce.

Section 1089 of the revised charter provides that—

"The board of education * * * shall designate * * * the kinds or grades of licenses to teach which may or shall be used * * * together with the academic and professional qualifications required for each kind or grade of license. * * * The names of those to whom licenses have been granted * * * shall be entered by the city superintendent upon lists to be filed in his office, a separate list being made for each grade or kind of license for which the board of education shall by its by-laws make provision."

In pursuance of section 1089, and under the power to make by-laws conferred by section 1068, the board passed by-law 75: "The following licenses shall be issued for service in the public schools * * * Teacher's License No. 1." In June, 1902, the applicant passed an examination to qualify him to hold license No. 1, and his name was put on a list of that character. But there were two lists, one for men and the other for women. The applicant contends that there should be only one list for both men and women, upon which the names of all persons holding license No. 1 should be entered according to their respective ratings, and irrespective of sex, and that the result of the two lists has been that women have been appointed as teachers in advance of men of the same rating. As early as November, 1898, the board had passed a resolution, "There shall be a separate list of men teachers and a separate list of women teachers for each borough," and the board, in its by-laws, in June, 1902, provided that the qualifications of applicants for license No. 1, for men should be different from the qualifications of applicants for such licenses for women. One of the differences, and perhaps the main difference, is that, in the case of women, graduation from certain high schools or academies is considered as tantamount to graduation for men from colleges or universities. This difference is based on the ordinary method of education and preparation of men and women for the duties of teachers. The salaries of male and female teachers differ, men receiving a larger salary than women. The policy of the board from the beginning of the school system has been to appoint a much greater proportion of women than men. Un-

der these conditions the use of separate .lists for men and women is not inconsistent with the charter provisions and is correct.

It is true that section 1068 of the revised charter provides that "until the board of education shall act under the provisions of this action the by-laws * * * in force on the first day of January, nineteen hundred and two, shall remain in full force and effect so far as they are not inconsistent with the provisions of this act and are applicable."

The resolution already referred to is not a by-law, and is not inconsistent with any by-law or with the provisions of the revised charter. While the by-laws of 1902 do not contain the exact language of the resolution of November, 1898, above referred to, which provided for separate lists for men and women, the by-law of June, 1902, which provided for different qualifications of men and women applicents, is equivalent to the previous resolution, and was evidently intended to carry into effect the same system that was provided by the resolution and the by-laws of 1898, and there is no inconsistency with the charter. The appointment of more female teachers than male teachers is certainly in the interest of an economical administration of the duties of the board, and seems to be a matter in which the board should be allowed to exercise its own discretion.

The order was correct, and should be affirmed.

Order affirmed, with $10 costs and disbursements. All concur.